IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 15, 2003

## JAMES R. BLUE v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 96-C-1373      Seth Norman, Judge**

_____

**No. M2002-00383-CCA-R3-PC - Filed April 1, 2003**

_____

The Petitioner pled guilty to three Class B felony drug offenses. Pursuant to the plea agreement, the trial court orally sentenced the Petitioner to ten years for each conviction with the sentences to be served concurrently to each other and to a prior four-year sentence, resulting in an effective sentence of ten years. After the sentence was imposed, the Petitioner asked that he be allowed to begin serving his sentence the following day. The trial court granted the Petitioner's request, with the condition that if he did not report as ordered, two of the sentences would run consecutively. The next day, the Petitioner failed to report, and the trial court entered judgments in which two of the Petitioner's sentences were consecutive, resulting in an effective sentence of twenty years. The Petitioner filed a petition for post-conviction relief, contending that his plea was unlawfully induced, that he received ineffective assistance of counsel, and that his sentences were illegal. Following a hearing, the post-conviction court denied relief. The Petitioner now appeals, arguing that the post-conviction court erred by denying his petition for post-conviction relief. Concluding that the trial court violated Tennessee Rule of Criminal Procedure 11 and the Petitioner's due process rights, we reverse the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Bruce Poag, Nashville, Tennessee, for the appellant, James R. Blue.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; Pamela Anderson and Kathy Morante, District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

# I. FACTS

## A. Hearing on the Plea Agreement

At the hearing on the plea agreement, the Petitioner testified that he understood his rights and that he voluntarily and freely signed the plea agreement. He also stated that he went over the document thoroughly with counsel. With permission from the Petitioner's counsel, the prosecution stated its proof as follows:

> During an undercover drug operation conducted by T.B.I. agents here in Davidson County [the Petitioner] on three occasions, beginning with the first occasion, September the 20th, 1995, . . . went to an apartment at Dominican House Apartments. He sold point five grams or more of cocaine to Agent Patrick Hal of the T.B.I. It was lab tested, came back positive.
>
> On October the 10th of '95 he went to that same apartment. He sold over twenty-six grams or more of cocaine to agent Patrick Hal. It was lab tested and came back positive.
>
> And on the 20th day of October he again went to that same apartment, sold an amount of cocaine of over twenty-six grams to T.B.I. agent Patrick Hal. And that, also, tested positive.
>
> These events were captured on video tape.

The Petitioner acknowledged that the facts recited by the State were basically true and correct. The trial court then accepted the plea and sentenced the Petitioner as a Range I, standard offender to concurrent ten-year sentences. Petitioner's counsel then requested that the court allow the Petitioner to report the following morning at 9:00 a.m. Counsel stated that the Petitioner owned his own business and had some affairs to get in order before he was detained. The following dialogue then transpired:

> THE COURT: With one understanding, [counsel]. And I will have to have this understanding from your client. If he should fail to appear Counts One and Three will run consecutive, one to the other. It will be a twenty year sentence instead of a ten year sentence. If he agrees to that I will agree to hear the request. If he fails to appear he's going to do twenty instead of ten, though.
> [THE PETITIONER]: I'll be here at nine.
> THE COURT: Are you telling me you agree to that?
> [THE PETITIONER]: Yes, sir.
> THE COURT: All right. I'll accept it.
> [COUNSEL]: Thank you, Judge.

## B. Post-Conviction Hearing

The following evidence was presented at the hearing on the petition for post-conviction relief. The Petitioner testified that he was incarcerated at Northeast Correctional Complex. He stated that he pled guilty in September 1998 and that pursuant to a plea agreement, he received two concurrent

ten-year sentences. The sentences were also to run concurrent to a prior sentence. He testified that he did not begin serving his sentence in the first case until the 1998 plea agreement had been negotiated. The Petitioner stated that he understood that according to the agreement, he would receive an effective sentence of "[t]en years at 30 percent." However, he stated that his sentence is currently "34 years at 30 percent," which he believes is incorrect.

The Petitioner testified that at the time he pled guilty, counsel went over both petitions to enter guilty pleas with him. He stated that on September 23, 1998, they went into the courtroom at 9:00 a.m. and "talked about what [the Petitioner] was going to get." The Petitioner testified, "He talked to me about the ten years at 30 percent and I was not willing to take that." He further testified that he told counsel that he wanted to take the case to trial. According to the Petitioner, counsel told him, "[I]f you go to trial they are probably going to fry your ass." The Petitioner testified that counsel indicated to him that if they went to trial, he would get the maximum sentence.

The Petitioner testified that he also talked to the prosecutor about his case. He recalled that on the day he pled guilty, the prosecutor, in the presence of counsel, told the Petitioner that if he asked the judge to go to trial, she would ask the judge to revoke his bond. The Petitioner testified that the prosecutor did not have any grounds to revoke his bond and that he had complied with all of the conditions of his bond release. He reported that after he pled guilty, he asked counsel to request that he be allowed to report the next day instead of being immediately detained. The Petitioner testified that he did not believe when he went to court that he would be incarcerated that day. However, the Petitioner did not report as directed. He claimed that he did not report as directed because he was upset with his attorney who, he claimed, "didn't do anything for [him]" and because he did not have time to prepare. The Petitioner testified that he had no intention of absconding.

The Petitioner stated that he was arrested six days after his guilty plea when one of his friends called the police. The Petitioner recalled that the trial court told him that if he did not report as ordered, the trial court would change the plea agreement from a ten-year sentence to a twenty-year sentence by ordering that his two sentences run consecutive to each other. He stated that he called counsel's office. He claimed he was told that counsel was in court "and that he probably didn't want to talk to [the Petitioner] anyway, because [he] didn't show back up in court." He further stated that counsel's secretary told him that "the Judge was mad at [him] anyway and he was talking about giving me a year for each day, for every day that [he] didn't show back up."

The Petitioner testified that he wrote counsel, and counsel responded that he was going to withdraw from the case. He stated that counsel indicated in his response to the Petitioner's letter that the Petitioner had written a check to him and then stopped payment. The Petitioner acknowledged that he stopped payment on a check to counsel. He stated that counsel's intention of withdrawing indicated a lack of interest in his case. He also stated that he responded in writing to counsel's letter, but he could not recall the contents of his letter to counsel. The Petitioner testified that he did not feel that counsel provided him with effective assistance during his representation.

Regarding his plea of guilty, the Petitioner testified that counsel did not explain before they arrived in court that the State was offering a sentence of ten years. He also testified that counsel did not explain to him anything that was not "on the paper." However, he admitted that he read the plea agreement and that counsel went over the plea agreement with him. Nevertheless, the Petitioner maintained that the trial court "changed the nature of [the Petitioner's] plea" by making the sentences run consecutively after accepting the initial plea agreement of concurrent sentences. The Petitioner admitted that he should have returned to court as instructed. He also admitted that in order to be able to report a day late, he agreed to accept a twenty-year sentence if he did not report the next day. The Petitioner testified that counsel told him that he would try to get him probation or into "boot camp," but after counsel mentioned these options, the options were not mentioned again.

On cross-examination, the Petitioner testified that he had been charged with six Class B felonies. He stated that counsel indicated that if they went to trial he would "face[] a lot of exposure on the charges against [him]." The Petitioner acknowledged that he had a prior four-year sentence. He stated that he was not aware that each Class B felony with which he was charged carried a potential eight-year to thirty-year sentence. The Petitioner stated that he did not watch a videotape of the crime with counsel. He stated that instead counsel gave him the videotape to take home and watch.

The Petitioner acknowledged that when he pled guilty, he told the trial court that he was satisfied with counsel's performance. He also acknowledged that the State went over the facts of the case with him. The Petitioner admitted that he told the trial court that the facts recited by the State were correct. However, he stated that he did not recall the State telling him that he was caught on video selling cocaine, and he maintained that the video did not show him selling cocaine. He stated that he was "pressured" into pleading guilty because the prosecutor told him that she would revoke his bond otherwise.

The Petitioner testified that he understood that when he pled guilty, he would receive an effective ten-year sentence. He acknowledged that in a letter, counsel advised him that the trial court's order to run the sentences consecutively might not have been appropriate under the law and that he might want to retain another attorney to pursue some form of action. He also acknowledged that counsel offered this advice after he stopped payment on a check to counsel. The Petitioner admitted that he understood that if he did not return to court as instructed, the trial court would run his sentences consecutively.

Counsel testified that he represented the Petitioner in two cases that ultimately were settled through plea agreements. He stated that the first case resulted in an effective sentence of four years and that the second case resulted in an effective sentence of ten years. According to counsel, the four-year sentence in the first case was continued until after the disposition of the second case. Regarding the second case, the case at issue here, counsel testified that there was a protracted negotiation process and that there were numerous court appearances and scheduling conflicts. Counsel estimated that the Petitioner visited his office on at least ten different occasions. Counsel testified that during the office visits, he was able to review the evidence with the Petitioner. He

recalled discussing with the Petitioner evidence that was on a videotape. Counsel testified that he gave the Petitioner a videotape and an audiotape of the offenses.

Counsel testified that he went over the State's request for discovery with the Petitioner. He stated that he told the Petitioner that he "would do what [he] could to get him a probated sentence." Counsel testified that he discussed the possibilities of probation, community corrections, and boot camp with the State, but the State would not agree to any such sentence. He recalled that the State originally offered the Petitioner sixteen years, and counsel negotiated the offer down to ten years. Counsel maintained that he did not make any promises to the Petitioner regarding probation or boot camp.

Counsel testified that he recalled reviewing the plea agreement, but he did not specifically recall reviewing it with the Petitioner. He stated that the Petitioner told him that he needed time to get his affairs in order, so the date of the plea was reset. Counsel testified that the Petitioner knew that he was going to plead guilty approximately a week prior to the plea hearing. He stated that at the Petitioner's request, he asked the trial court to allow the Petitioner to report the day after the plea agreement. Counsel testified that the trial court agreed to allow the Petitioner to report the following day at 9:00 a.m., with the understanding that if the Petitioner did not show up, two of the ten-year sentences would run consecutively for an effective sentence of twenty years.

Counsel testified that "every court date [the Petitioner] wanted continued" so that he could "get his affairs in order." He recalled that after the plea, the Petitioner did not show up as ordered and was arrested a short time later. Counsel testified that he did not recall if he tried to initiate contact with the Petitioner after his arrest. He stated that the Petitioner wrote him a letter after he was incarcerated and wanted counsel to "do something" about his sentence.

Counsel testified that the Petitioner wrote him a check for $500 on the day of his plea and then stopped payment on the check. He stated that the Petitioner still owed him "at least a couple thousand dollars." Counsel testified that after the plea agreement, he filed a motion to withdraw as the Petitioner's attorney, and the trial court responded that was not necessary for counsel to withdraw because the case was over. He reported that in his letter to the Petitioner, he wrote that the Petitioner might wish to get another attorney to review the sentence. Counsel recalled that the State may have told the Petitioner "something about revoking his bond." He stated that the Petitioner "didn't appear to be pressured at all" during the plea process. Counsel testified that he did not know if the Petitioner had conversations with the State outside his presence.

On cross-examination, counsel testified that the Petitioner failed to show up at many of their scheduled meetings. He reported that he went over the discovery materials with the Petitioner, and he believed that he made him a copy of all discovery materials. He also reported that he went over the audio and video tapes with the Petitioner. Counsel testified that he indicated to the Petitioner that if he went to trial, he would likely be convicted on at least three of the counts and probably on all of the counts. He stated that the Petitioner was arrested in the second case while he was on bond in the first case. Counsel testified that the plea offers "happened over a long period of time." He

stated that he made the motion to withdraw from the case after the Petitioner stopped payment on the check.

On re-direct examination, counsel could not recall if the Petitioner's fee was for the whole case or just for the plea agreement. He stated that he usually charges one fee for all services rendered through the plea discussions, "and then if it is set for trial then there is another fee that kicks in." The court then asked counsel about the sentence. Counsel stated that there was no indication on any of the judgments or the recommendation by the State that the Petitioner was allowed to report a day late.

## II. ANALYSIS

The Petitioner argues that the trial court erred by participating in plea negotiations and that the trial court did not have the authority to order consecutive sentencing based upon his failure to show up for jail. In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-203. The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Id. § 40-30-210(f). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457.

In arguing that the trial court erred by amending the plea agreement, the Petitioner contends that the trial court improperly engaged in plea discussions. Tennessee Rule of Criminal Procedure 11(e)(1) provides as follows regarding plea agreement procedure:

> In [g]eneral, . . . [t]he district attorney general and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the district attorney general will do any of the following:
> (A) [m]ove for dismissal of other charges; or
> (B) [m]ake a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or
> (C) [a]gree that a specific sentence is the appropriate disposition of the case.
> The court shall not participate in any such discussions. (emphasis added.)

Tennessee Rule of Criminal Procedure 11(e)(2) states the following regarding the notice of a plea agreement:

> If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause,

in camera, at the time the plea is offered. If the agreement is of the type specified in subdivision (e)(1)(A) or (C), the court may accept or reject the agreement pursuant to subdivision (e)(4), or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea.

Thus, a trial court has three options when presented with a specific plea agreement from the parties involved. The trial court may (1) accept the agreement, (2) reject the agreement, or (3) defer the decision until there has been an opportunity to consider the presentence report. Tenn. R. Crim. P. 11(e)(2).

In this case, the trial court clearly accepted the plea agreement in which the Petitioner received three ten-year sentences that were to be served concurrently with each other and with a prior four-year sentence. The trial court stated its acceptance on the record. However, following the acceptance of the plea agreement by the court, the Petitioner, through counsel, requested that he be allowed to begin the service of his sentence the following day. The trial court, in an effort to insure that the Petitioner report to jail the following day, told the Petitioner that he could report the next day if he agreed that two of his sentences would be served consecutively if he failed to appear. The Petitioner agreed to the condition proposed by the trial court.

We conclude that the trial court improperly negotiated a condition to the Petitioner's plea agreement after having approved and accepted the original agreement. The trial court accepted a plea agreement in which the Petitioner was to serve three concurrent ten-year sentences. Then, in response to Petitioner's request, through counsel, to report the next day rather than immediately, the trial court placed a condition on its acceptance of the plea agreement: that the Petitioner appear the next day at 9:00 a.m. The trial court then informed the Petitioner that if the Petitioner failed to appear the next day, two of the ten-year sentences would be consecutive rather than concurrent. In effect, the trial court stated that if the Petitioner failed to appear the next day, it would accept a plea agreement involving an additional ten years of incarceration. The Petitioner agreed, but failed to appear the next day.[1]

When the Petitioner failed to report the following day as ordered, the trial court apparently[2] entered judgments sentencing the Petitioner to consecutive sentences, thus accepting a plea agreement that included a substantially different sentence than the original agreement. In our view, although the trial court orally accepted the original agreement, it then conditioned its acceptance upon the Petitioner appearing in court at 9:00 a.m. the next day, at which time the trial court would enter the appropriate judgment forms to implement the original plea agreement. Because the

---

[1] The evidence presented at the post-conviction hearing revealed no reasonable excuse for the Petitioner's failure to appear.

[2] We are hampered in our review of the evidence because the judgment forms are not included in the technical record.

Petitioner failed to appear, the trial court accepted an alternative plea agreement and entered judgments imposing consecutive sentences for two of the counts, resulting in an effective sentence of twenty years. The alternative plea agreement was negotiated between the trial court and the Petitioner, contrary to the mandates of Tennessee Rule of Criminal Procedure 11.

The Tennessee Supreme Court has held that once plea agreements are approved by the trial court, they become binding and enforceable contracts. See State v. Howington, 907 S.W.2d 403, 407 (Tenn. 1995). Thus, when the trial court in this case accepted the Petitioner's plea, it was bound by the agreement and without authority to add conditions to the agreement. The trial court did not comply with Tennessee Rule of Criminal Procedure 11 when it entered into plea negotiations with the Petitioner that resulted in a conditional acceptance of the original plea agreement coupled with an alternative plea agreement.

The Petitioner essentially asserts that his sentence is voidable because the manner in which it was imposed abridged his constitutional right to due process. We agree. Although we do not conclude that Petitioner's counsel was ineffective, the Petitioner has raised an issue involving the violation of his due process rights, which satisfies the requirement that a petition for post-conviction relief be based upon "the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-203. The contention that a sentence is voidable due to an abridgement of the constitutional right to due process is an appropriate issue for adjudication in a petition for post-conviction relief. State v. McKnight, 51 S.W.3d 559, 564 (Tenn. 2001). In our view, by placing a condition on its acceptance of the original plea agreement, and proposing an alternative plea agreement to be entered if the condition was not met, the trial court acted improperly. The participation of the trial court in negotiating the alternative plea agreement that resulted in a twenty year sentence violated Tennessee Rule of Criminal Procedure 11 and the Petitioner's due process rights.

We note that Tennessee Code Annotated § 40-30-211, pertaining to the final disposition of petitions for post-conviction relief, provides for the entry of "an appropriate order and any supplementary orders that may be necessary and proper." Because we have concluded that the trial court accepted the original plea agreement in which all of the Petitioner's sentences were to be served concurrently, we also conclude that this case must be remanded to the trial court for the entry of amended judgments reflecting those concurrent sentences, resulting in an effective incarcerative sentence of ten years.

Accordingly, the judgment of the post-conviction court is reversed and the case is remanded for the entry of amended judgments reflecting concurrent sentences consistent with this opinion.

_____
ROBERT W. WEDEMEYER, JUDGE